BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| IN RE | ) ) ) ) ) ) ) ) ) | MDL No. 2371 |
| UNIFIED MESSAGING SOLUTIONS LLC PATENT LITIGATION | | |

RESPONSE OF UNIFIED MESSAGING SOLUTIONS LLC
IN OPPOSITION TO MOTION FOR TRANSFER OF ACTIONS TO THE NORTHERN
DISTRICT OF ILLINOIS PURSUANT TO 28 U.S.C. § 1407

Respondent Unified Messaging Solutions LLC ("Unified Messaging") contests the motion to transfer filed by Time Warner Cable Inc. ("Time Warner"). Time Warner's motion seeks to centralize lawsuits for coordinated or consolidated pretrial purposes in the Northern District of Illinois. Specifically, Unified Messaging opposes centralization of its two lead cases, *Unified Messaging Solutions LLC v. Facebook, Inc., et al.*, 6:11-cv-00120-LED (hereinafter "*UMS v. Facebook*") and *Unified Messaging Solutions LLC v. Google Inc., et al.*, 6:11-cv-00464-LED (hereinafter "*UMS v. Google*"), and suggests that any centralization — whether or not including the two lead cases — should occur in the Eastern District of Texas, Hon. Leonard Davis presiding.

I.      SYNOPSIS

Unified Messaging has filed twenty-four separate lawsuits,[1] presently involving forty-six defendants.[2]  Of those forty-six defendants, twenty-eight (more than 60% of the total) are parties in the Eastern District of Texas.  Unified Messaging acknowledges that there is, at least, some limited legal and factual overlap among the pending cases; however, centralization of all of the Unified Messaging cases is not the most efficient course of action.

The first two lawsuits filed by Unified Messaging, *UMS v. Facebook* and *UMS v. Google*, enmesh twenty-one of the forty-six defendants and have already been coordinated in Texas for pretrial purposes, including claim construction.[3]  Infringement contentions and invalidity contentions have been served in each, and both cases are progressing appropriately and efficiently towards their consolidated *Markman* hearing on September 13.[4]

In *UMS v. Facebook*, the deadline for the parties to produce all relevant documents has passed.  The same deadline will pass in *UMS v. Google* by the time this matter is heard by the Panel.  Additionally, Unified Messaging will have filed its opening claim construction brief, and the defendants will be days from submitting their responsive brief(s).  Moreover, both cases have

---

[1] In addition to the lawsuits listed by Time Warner, Unified Messaging notifies the Panel of seven tag-along suits recently filed in the Eastern District of Texas (three suits) and the Southern District of New York (four suits).  These are:  *Unified Messaging Solutions LLC v. Avid Life Media, Inc.* (E.D. Tex.); *Unified Messaging Solutions LLC v. PlentyOfFish Media, Inc.* (E.D. Tex.); *Unified Messaging Solutions LLC v. Cupid,* PLC (E.D.Tex); *Unified Messaging Solutions LLC v. American Express Co.* (S.D.N.Y.); *Unified Messaging Solutions LLC v. BNY Mellon* (S.D.N.Y.); *Unified Messaging Solutions LLC v. Morgan Stanley Smith Barney* (S.D.N.Y.); and *Unified Messaging Solutions LLC v. The Vanguard Group, Inc.* (S.D.N.Y.).

[2] For the purposes of this motion, affiliated defendants are grouped – *e.g.*, E*TRADE Bank and E*TRADE Financial Corporation are considered a single defendant.

[3] In addition to the consolidated *Markman* hearing, Judge Davis structured the docket control orders so that the case deadlines dovetail cleanly towards trial. Both cases are set for trial concomitantly the week of September 9, 2013.

[4] *See* Declaration of Edward R. Nelson, III ("Nelson Decl.") in support of this opposition, at Exhs. 1 and 2 (Docket Control Orders).

2

late summer mediation deadlines,[5] such that all mediations will have occurred by the time the Panel hears oral argument, or will occur soon thereafter.

Time and again, Judge Davis has demonstrated his willingness and proficiency in handling complex, multi-defendant patent litigation matters. Such is evident, for instance, in his November 3, 2011 Order concerning seven co-pending lawsuits brought by Uniloc USA, Inc.[6] Though the Order initially offers preliminary constructions for disputed claim terms, the greater part comprises Judge Davis' thoughts on effective case management in a multi-case, multiple defendant environment and highlights aspects of the Court's novel approach.[7]

Given Judge Davis' deft handling of the two lead Unified Messaging cases thus far, and in deference to judicial economy, the most sensible path is to centralize the remaining, related Unified Messaging cases in the Eastern District of Texas. If not already, Judge Davis will soon have considerable familiarity with the patents-in-suit due to the ongoing consolidated claim construction proceedings. Meanwhile, the follow-on Unified Messaging cases in other jurisdictions are still in the complaint and answer phase. Because the Eastern District of Texas has immeasurably more experience with these cases than other districts — which have none — centralization in a district other than the Eastern District of Texas would be antithetical to the notion of efficiency.

Irrespective of whether the two lead cases are included in any further coordination of pretrial proceedings, the docket of the Eastern District is well-suited to take on centralization of this nature. The Eastern District of Texas has no MDL centralizations before it. Conversely, the Northern District of Illinois presently contends with nineteen such matters.

---

[5] August 8, 2012 and September 7, 2012, respectively. *See id*.
[6] *Uniloc USA, Inc. v. Sony Corp. of Am.*, Case No. 6:10-cv-00373, Dkt. 215, at *5-7 (E.D. Tex. Nov. 3, 2011). *See* Nelson Decl., Exh. 3 (copy of Order).
[7] See additional discussion below at Section III.C.1.

**II.   SUMMARY OF CASES**

As of the date of this response, there are twenty-four Unified Messaging cases pending across four districts. Several cases, including all seven Texas cases, involve five related patents: U.S. Patent Nos. 6,857,074 (the '074 patent), 7,836,141 (the '141 patent), 7,895,306 (the '306 patent), 7,895,313 (the '313 patent), and 7,934,148 (the '148 patent). In contrast, eight of nine Illinois cases, and all of the Missouri cases, involve only the '148 patent. Charts reflecting the patents involved in each lawsuit appear immediately below:

| EASTERN DISTRICT OF TEXAS | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Case name** | **No. of remaining defendants** | **date case filed** | **Patents Involved** | | | | |
| | | | **074** | **141** | **306** | **313** | **148** |
| *Facebook, Inc., et al.* | 11 | 3/15/2011 | X | X | X | X | X |
| *Google Inc., et al.* | 10 | 09/07/2011 | X | X | X | X | X |
| *American Airlines, Inc.* | 1 | 12/05/2011 | X | X | X | X | X |
| *Intuit Inc., et al.* | 3 | 02/23/2012 | X | X | X | X | X |
| *PlentyOfFish Media, Inc.* | 1 | 4/26/2012 | X | X | X | X | X |
| *Cupid, PLC* | 1 | 4/26/2012 | X | X | X | X | X |
| *Avid Life Media, Inc.* | 1 | 4/26/2012 | X | X | X | X | X |

| NORTHERN DISTRICT OF ILLINOIS | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Case name** | **No. of remaining defendants** | **date case filed** | **Patents Involved** | | | | |
| | | | **074** | **141** | **306** | **313** | **148** |
| *Career Builder, LLC* | 1 | 03/01/2012 | | | | | X |
| *Discover Financial Servs.* | 1 | 03/01/2012 | | | | | X |
| *Groupon, Inc.* | 1 | 03/01/2012 | | | | | X |
| *Orbitz, LLC* | 1 | 03/01/2012 | | | | | X |
| *Northern Illinois Gas Co.* | 1 | 03/01/2012 | | | | | X |
| *Southwest Airlines Co.* | 1 | 03/01/2012 | | | | | X |
| *UBS Financial Services, Inc.* | 1 | 03/01/2012 | X | X | X | X | X |
| *United Air Lines, Inc.* | 1 | 03/01/2012 | | | | | X |
| *Walgreen Co.* | 1 | 03/01/2012 | | | | | X |

| EASTERN DISTRICT OF MISSOURI | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Case name** | **No. of remaining defendants** | **date case filed** | **Patents Involved** | | | | |
| | | | 074 | 141 | 306 | 313 | 148 |
| *Ameren Corp.* | 1 | 03/01/2012 | | | | | X |
| *Commerce Bancshares, Inc.* | 1 | 03/01/2012 | | | | | X |
| *Laclede Gas Co.* | 1 | 03/01/2012 | | | | | X |
| *Scottrade, Inc.* | 1 | 03/01/2012 | | | | | X |
| *Sprint Nextel Corp.* | 1 | 03/01/2012 | | | | | X |

| SOUTHERN DISTRICT OF NEW YORK | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Case name** | **No. of remaining defendants** | **date case filed** | **Patents Involved** | | | | |
| | | | 074 | 141 | 306 | 313 | 148 |
| *American Express* | 1 | 05/03/2012 | X | X | X | X | X |
| *BNY Mellon* | 1 | 05/03/2012 | X | X | X | X | X |
| *Morgan Stanley* | 1 | 05/03/2012 | X | X | X | X | X |
| *Vanguard* | 1 | 05/03/2012 | | | | | X |

Only the two lead cases in Texas have progressed beyond the complaint-and-answer phase and reached significant benchmarks. The parties in *UMS v. Facebook* have exchanged over a million pages of documents, served voluminous infringement and invalidity contentions, and exchanged their lists of terms and phrases for construction. In *UMS v. Google*, the parties are engaged in written discovery and document production, and they, too, have served infringement and invalidity contentions and exchanged claim terms and phrases for construction.

### III.   ARGUMENT

####   A.   Legal Standard and Recent Decisions of the Panel.

When civil actions involve one or more common questions of fact and are pending in different districts, the Panel has discretion to transfer those actions to a single district for coordinated or consolidated pretrial proceedings. 28 U.S.C. § 1407(a). The Panel has recently considered a number of factors when deciding whether to centralize and, if so, where centralization should occur. These include: (i) the procedural advancement of the cases; (ii) the

5

ability to eliminate the risk of inconsistent pretrial rulings; (iii) conservation of judicial and party resources; (iv) selecting a jurist who is familiar with the merits of the litigation and who has already taken steps to streamline resolution of a matter; and (v) the location of the earliest and most concentrated actions.  *See, e.g., In re Teamster Car Hauler Prod. Liab. Litig.*, MDL No. 2339, 2012 U.S. Dist. LEXIS 55465, at *2 (J.P.M.L. Apr. 17, 2012) (centralization not warranted because "some of the actions have been pending in state or federal court for several years, and several are procedurally so far advanced that discovery is completed or nearly completed");  *In re MF Global Holdings Ltd. Inv. Litig.*, MDL No. 2338, Dkt. 145 at 2-3 (J.P.M.L. Apr. 17, 2012) (favoring centralization to avoid duplicative discovery and eliminate the risk of inconsistent pretrial rulings, seeking conservation of judicial resources, and selecting a transferee district citing the favorable factor of a jurist "who already has taken steps to streamline the resolution of this matter"); *In re MI Windows and Doors, Inc. Prods. Liab. Litig.*, MDL No. 2333, Dkt. 47 at 2 (J.P.M.L. Apr. 23, 2012) (where selection of transferee district favored a district where "[o]ne of the earliest and most advanced actions is pending").

Historically, the Panel has also relied on other factors for choosing a transferee district, such as whether the potential transferee district is burdened with other MDL cases and whether the district is capable of handling a complex matter.  *See, e.g., In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, 293 F. Supp. 2d 1375, 1377 (J.P.M.L. 2003) (stating that the transferee forum was "not currently occupied with multiple other MDL assignments [and] is equipped with the resources that this complex docket is likely to require").

> **B. The Two Lead Cases in Texas Are in an Advanced Stage of Litigation and Need Not Be Centralized.**

The two lead cases filed by Unified Messaging need not, and should not, be centralized. Though Unified Messaging acknowledges that all of its cases share (to some degree) common

questions of law and fact, the Panel has: (i) centralized cases while leaving it to the transferee court's discretion whether procedurally advanced cases should be subjected to coordination; and (ii) centralized cases while omitting certain advanced cases from the purview of its order. *See, e.g., In re Bear Creek Tech., Inc. Patent Litig.,* MDL No. 2344, Dkt. 103 at 1-2 (J.P.M.L. May 2, 2012); *In re Teamster Car*, 2012 U.S. Dist. LEXIS 55465, at *2. In this instance, *UMS v. Facebook* and *UMS v. Google* are situated such that they should not be subjected to centralization or coordinated with other cases.

Those lead cases — involving twenty-one of the forty-six current defendants[8] — are on the precipice of a consolidated claim construction hearing and are already substantially coordinated for all pretrial proceedings and trial. *See* Nelson Decl., Exhs. 1 and 2; *see also* discussion at Sections I and II, above. Meanwhile, no other Unified Messaging case has proceeded beyond the complaint and answer phase.

Given their significant advancement over related cases, the lead cases will not benefit from centralization, consolidation, or further coordination. Moreover, any transfer of the lead cases to another district will substantially prejudice Unified Messaging by completely halting efficiencies already achieved through Judge Davis' efforts at coordinating their proceedings. Thus, the Panel should exercise its sound discretion and limit any centralization to the later-filed Unified Messaging cases.

---

[8] Unified Messaging has settled its disputes with nine of the original thirty defendants in Texas. A tenth defendant, American Airlines Inc., has been severed from the first case and its severed action has been stayed due to the airline's bankruptcy proceedings.

### C. Should Centralization Occur, the Cases Should Be Transferred to the Eastern District of Texas.

*1. Recent decisions from the Panel support centralization in the Eastern District of Texas.*

Regardless of which cases this Panel decides should be centralized, the Eastern District of Texas is the appropriate transferee district. The Panel has supported its most recent decisions by weighing factors such as whether the court is familiar with the patents, where the most advanced cases are located, whether the selected judge has already taken steps to consolidate or coordinate related actions, whether the transferee district is easily accessible, and whether the transferee district is currently handling multiple MDL matters. Each of these factors favors centralization in the Eastern District of Texas, and, taken together, the factors overwhelmingly substantiate this result.

As discussed above, no other district has been exposed to more than a complaint and answer. Yet in the two lead Texas cases, discovery is progressing, protective orders have been negotiated and entered, schedules are set, and claim construction preparations are well underway. Moreover, each case pending in Texas involves the universe of five asserted patents. This cannot be said for courts in Illinois, Missouri, and New York.

In effect, the Texas court is, or will soon be, familiar with all issues common to cases pending in all districts, while other courts will not. Burdening, particularly, the Illinois or Missouri courts with the task of tackling additional issues not otherwise before them seems contrary to judicial economy. This series of cases began in Texas, is progressing in Texas, and the Texas court is most familiar with the totality of issues.

With respect to the Texas court's ability to handle centralization of this breadth, the Panel previously emphasized the selection of jurists who have taken steps toward consolidation and are

8

not currently occupied with multiple MDL matters. *In Re MF Global Holdings* at 2-3; *In Re Nat'l Century Fin. Enters.,* 293 F. Supp. 2d at 1377. Not only has Judge Davis taken significant action by coordinating the lead cases, he has documented his acumen in handling large, diverse, multi-defendant patent suits.

Judge Davis addressed the topic of effective case management in a November 3, 2011 Order concerning seven co-pending lawsuits brought by Uniloc USA, Inc.[9] In the Order, Judge Davis summarized his evolving multi-case, multi-defendant case management procedures and noted:

> … despite the very vocal criticism of large multiple defendant cases, this case in particular demonstrates that with willing parties, the Court can fashion a litigation process that attempts to successfully address the myriad concerns of all parties. As a result, this leads to efficient and economical resolution of these cases with regard to many Defendants without the need for expensive discovery.

*Uniloc USA, Inc. v. Sony Corp. of Am.*, Case No. 6:10-cv-00373, Dkt. 215, at *6-7 (E.D. Tex. Nov. 3, 2011). He further "observed that many Defendants in these multiple party suits save significantly by sharing costs for, among other things, experts and third-party discovery vendors" and that "multiple Defendant suits, run efficiently and economically, may avoid some of the thorny *stare decisis* issues that invariably arise when a patent has been previously evaluated by another court…." *Id*. at *7.

As a consequence of Judge Davis' effective management of the Uniloc cases, he reported that, "of the 124 Defendants initially named and the 95 Defendants that appeared at the April status conference, only 20 parties remained in the case." *Id.* at *6.

---

[9] *See* Nelson Decl., Exh. 3.

Despite Judge Davis' track record for efficiently handling large, multiple defendant cases, there are <u>no</u> MDL centralizations pending in the Eastern District of Texas.  *See* Nelson Decl., Exh. 4.  Meanwhile, there are currently nineteen MDL centralizations in the Northern District of Illinois (eleven of those are pending before judges enlisted in the district's Patent Pilot Program), and five MDL centralizations in the Eastern District of Missouri.  *Id.*  The demonstrated ability and willingness of the Eastern District of Texas (and, particularly, Judge Davis) to undertake large, complicated matters, coupled with the absence of an MDL caseload, points to Texas as the logical forum for centralization (both in terms of congestion and efficiency).

### 2. *Additional factors favor centralization in the Eastern District of Texas.*

Time Warner commits a significant portion of its brief to analyzing travel-related conveniences attendant to Illinois centralization.  Br. at 13-15, Exhs. J-Q.  The Panel has previously stated, however, that "there is usually no need for the parties and witness to travel to the transferee district for depositions or otherwise" and that "the judicious use of liaison counsel and lead counsel will eliminate the need for most counsel to ever travel to the transferee district." *In re Cygnus Telecom. Tech., LLC Patent Litig.*, 177 F. Supp. 2d. 1375, 1376 (J.P.M.L. 2001). Nevertheless some hearings, such as *Markman*, may be held in the transferee district.

While Time Warner emphasizes the number of flights available to/from Chicago airports, it omits similar statistics for flights available to/from Dallas airports.  DFW International Airport, for example, is the nation's third most-trafficked airport, handling almost 50 million passengers on an annual basis.  *See* Nelson Decl., Exh. 5.  Meanwhile, Dallas Love Field handles thousands of flights, servicing 7.6 million passengers annually.  *See* Nelson Decl., Exh. 6.  Dallas is

immediately adjacent to Texas' Eastern District and is centrally-located, making for easy access from all parts of the United States.

In addition, at least six Unified Messaging defendants maintain their principal place of business in Texas,[10] and Unified Messaging, itself, operates from Frisco in the Eastern District. *See* Nelson Decl., Exh. 7 (*UMS v. Google*, Dkt. 193-2).  Indeed, three of Unified Messaging's directors are permanently based at the Frisco offices.  *Id*.  Thus, to the extent that the Panel considers party location, there are significant ties to Texas, including the plaintiff's ties — Unified Messaging being the sole entity common to all the related lawsuits.  *See In re Mirtazapine Patent Litig.*, 199 F. Supp. 2d 1380, 1381 (J.P.M.L. 2002).

### III.   CONCLUSION

For reasons detailed above, centralization involving the two lead cases, *Unified Messaging v. Facebook* and *Unified Messaging v. Google*, should be denied.  For the remaining cases, centralization in Texas is the clear and convincing choice.

The most advanced cases are in Texas.  Judge Davis has vast experience with patent cases and a track record of success with complex, multi-defendant patent litigation.  And the Eastern District of Texas is easily accessible, centrally located, and is not currently burdened with any MDL proceeding.

 **DATED:  May 7, 2012**

---

[10] True Beginnings LLC is based in Irving, Texas.  Match.com, LLC and AT&T Services, Inc. are based in Dallas, Texas.  Conn's Inc. and Conn Appliances, Inc. are based in Beaumont, Texas.  Dell Inc. is based in Round Rock, Texas.  American Airlines, Inc. is based in Fort Worth, Texas.

Respectfully submitted,

/s/ Edward R. Nelson, III
Edward R. Nelson, III
Brent N. Bumgardner
Christie B. Lindsey
Thomas C. Cecil
NELSON BUMGARDNER CASTO, P.C.
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
(817) 377-9111
(817) 377-3485 (fax)
enelson@nbclaw.net
bbumgardner@nbclaw.net
clindsey@nbclaw.net
tcecil@nbclaw.net

T. John Ward, Jr.
Texas State Bar No. 00794818
J. Wesley Hill
State Bar No. 24032294
WARD & SMITH LAW FIRM
111 W. Tyler Street
Longview, Texas 75601
(903) 757-6400
(903) 757-2323 (fax)
jw@wsfirm.com
wh@wsfirm.com

Eric M. Albritton
Texas State Bar No. 00790215
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, TX 75606
(903) 757-8449
(903) 758-7397 (fax)
ema@emafirm.com

**Attorneys for Plaintiff**
**Unified Messaging Solutions LLC**